OPINION
On November 3, 2000, the Stark County Grand Jury indicted appellant, Thomas Spencer, Jr., on one count of felonious assault with a firearm specification in violation of R.C. 2903.11 and one count of aggravated menacing in violation of R.C. 2903.21. Said charges arose from the shooting of Michael Darr at appellant's residence.
A jury trial commenced on April 11, 2001. A jury was selected prior to lunch. Following the lunch recess, Juror No. 76, an African-American, did not return. The Stark County Sheriff's Department attempted to locate the juror, but they were unsuccessful. Thereafter, the state moved to replace the juror with the first alternate, a Caucasian. Appellant requested a mistrial claiming he was denied his rights under the Thirteenth and Fourteenth Amendments. The trial court denied the request and replaced Juror No. 76 with the first alternate.
At the close of the state's case, appellant moved for acquittal pursuant to Crim.R. 29. The trial court sustained the motion as to the aggravated menacing charge. The jury found appellant guilty of the felonious assault charge. By judgment entry filed April 23, 2001, the trial court sentenced appellant to five years in prison plus three years for the firearm specification, to be run consecutively.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE JUDICIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT WHEN THE TRIAL COURT DENIED APPELLANT'S MOTION FOR MISTRIAL.
 II THE TRIAL COURT ABUSED ITS DISCRETION TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT WHEN IT SUBSTITUTED A CAUCASIAN ALTERNATE JUROR FOR AN ABSENT AFRICAN-AMERICAN JUROR WITHOUT EXERCISING DUE DILIGENCE TO LOCATE THE ABSENT JUROR.
 III APPELLANT WAS DENIED HIS FREEDOM WITHOUT DUE PROCESS OF LAW BY HIS CONVICTION WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I, II
In these assignments of error, appellant claims the trial court erred in substituting the first alternate juror for Juror No. 76, and erred in denying his request for a mistrial as a result of that substitution. We disagree.
The grant or denial of a mistrial rests in the sound discretion of the trial court. State v. Garner (1995), 74 Ohio St.3d 49. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
Appellant based his request for a mistrial on the fact that the lone African-American juror, Juror No. 76, failed to appear and was replaced by the first alternate juror who was Caucasian.[1]
Although appellant alludes to this case being similar to Batson v.Kentucky (1985), 476 U.S. 79, it is clear the facts sub judice do not qualify as a Batson claim. In this case, the jury was sworn and all alternates were passed for cause and peremptory challenges. T. at 122-124. Opening statements by counsel and preliminary instructions by the trial court were given. T. at 126-160. Following the lunch break (1:25 p.m.), Juror No. 76 failed to return. T. at 161. A jury commissioner attempted to contact the juror at his home, but the answering machine came on. T. at 162. At defense counsel's suggestion, the trial court waited until 1:50 p.m. T. at 163-164. Thereafter, the trial court sent sheriff's deputies to the juror's home. T. at 165-166. The deputies called the juror on the telephone and knocked on the door, but received no response. T. at 167. At 2:46 p.m., approximately one hour and fifteen minutes from the end of the lunch break, the trial court replaced Juror No. 76 with the first alternate juror, Juror No. 93.[2]
T. at 168.
Crim.R. 24(F) controls the use of the alternate jurors and the mandatory language states the following in pertinent part:
 Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties.
We fail to find that the trial court abused its discretion in following the mandates of Crim.R. 24(F). The trial court made diligent efforts to find the missing juror, including telephone calls, searching the courthouse and sending deputies to the juror's home. There is no showing of any manifest injustice created by the adherence to Crim.R. 24(F). Assignments of Error I and II are denied.
 III
Appellant claims his conviction was against the manifest weight of the evidence. We disagree.
On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
Appellant was convicted of felonious assault in violation of R.C.2903.11 which states:
No person shall knowingly:
Cause serious physical harm to another;
 Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
Appellant specifically claims there was a failure of proof that he knowingly caused or attempted to cause serious physical harm to Mr. Darr. Although appellant admitted that he discharged his weapon and Mr. Darr suffered a gunshot wound, he did not mean to hit anyone or shoot anyone.[3] T. at 150, 154. Appellant challenges the credibility of Mr. Darr and his girlfriend, Lalana Vales.[4]
At the outset, we note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v.Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
Appellant testified that on a day previous to the incident, he found his bedroom disturbed and items missing from his home. T. at 541-542. On the morning of the day of the incident, appellant returned home and while he was in the basement, he heard his dog barking and the sound of something being pried. T. at 545. Appellant grabbed his gun and eased open his door. T. at 546. Appellant observed a person dressed in black with a black hood on. T. at 547. As appellant opened the door, the gun discharged. T. at 547. Appellant took the hood off and recognized Mr. Darr. T. at 548-549. Appellant grabbed Mr. Darr as he was going over the banister, but Mr. Darr fell to the ground. T. at 549. Appellant accused Mr. Darr of attempting to break into his home. T. at 551. Before Mr. Darr could answer, appellant noticed Ms. Vales nearby. T. at 551-553. As appellant was speaking with Ms. Vales, Mr. Darr fled. T. at 553-555. Appellant ordered Mr. Darr to stop and when he did not, appellant fired his gun in the air to "catch him." T. at 555. Appellant denied firing any shots directly at Mr. Darr as he fled. T. at 554. Appellant caught up with Mr. Darr and told him not to move while he went in to call the police. T. at 556-557. When appellant went into his home to call the police, Mr. Darr and Ms. Vales ran away. T. at 557. Appellant never called the police. T. at 558. He just secured his house and went back to work. T. at 559.
Both Mr. Darr and Ms. Vales testified as to what happened. Mr. Darr testified appellant was looking into who had broken into his home and told Mr. Darr it was a person who was messing with his girlfriend. T. at 176. Mr. Darr admitted that at that time, he was the person who was "messing with her." T. at 175-176. Appellant told Mr. Darr "he knew who it was and he would take care of it." T. 177. On the day of the incident, Mr. Darr went to appellant's home with Ms. Vales to talk about this argument. T. at 178. They observed appellant's vehicles at the home. T. at 178. They knocked on the door, but there was no answer. T. at 184-185. When Ms. Vales knocked again, the door flew open and appellant put a gun in Mr. Darr's face and told Ms. Vales to get down on the ground. T. at 185-186. Appellant waved the gun back and forth and pointed it at them. T. at 186. Appellant punched Mr. Darr in the forehead and grabbed his sweatshirt. T. at 186-187. Mr. Darr went over the porch banister and attempted to flea. T. at 187. He heard a shot and told appellant to "chill out." T. at 187. Appellant approached Mr. Darr. T. at 188. Mr. Darr ran off and heard two more gunshots. T. at 188-191. The third shot hit Mr. Darr. T. at 191. Ms. Vales pulled Mr. Darr into her vehicle and took him to his grandparents' home. T. at 192-193.
Ms. Vales testified she and Mr. Darr went to appellant's home because Mr. Darr "wanted to talk to him." T. at 340. After Ms. Vales knocked on the door, appellant came out the door with a gun and went right after Mr. Darr. T. at 346. Mr. Darr went over the porch banister and ran out into the street. T. at 347-348. Appellant told Mr. Darr to come back and pointed his gun at Ms. Vales. T. at 349. Appellant told her to stay on the porch and went after Mr. Darr. T. at 349. From the porch, appellant fired his gun toward Mr. Darr. T. at 350-351. Appellant went over the porch banister after Mr. Darr and fired twice toward his direction. T. at 352-353. Ms. Vales heard Mr. Darr say "ouch" and call her name. T. at 353. Appellant returned and told Ms. Vales to leave. T. at 354. Ms. Vales found Mr. Darr and realized he had been shot in the back with the bullet "sticking out the front of him." T. at 357. Ms. Vales put Mr. Darr in her vehicle and drove him to his grandparents' home. T. at 357. Eventually, Mr. Darr went to the hospital where it was discovered that he had two wounds, one in his left buttocks and one in his abdomen. T. at 249-250, 257, 325.
A neighbor testified he heard two shots and someone say "I got you, motherfucker, or something around there." T. at 279-280. Another neighbor heard three shots and observed appellant by a person on the ground. T. at 427, 432. When appellant was questioned by police, he denied being at his home at the time of the shooting and denied his home had been broken into. T. at 447-448. One bullet was taken from Mr. Darr's body and shell casings were found at the scene. T. at 325, 469-472.
Given the totality of the evidence, we cannot find the jury lost its way. Appellant claimed two accidental firings of his gun, one in the air. Mr. Darr was shot in the left buttocks with the bullet lodged in his lower abdomen. Both Mr. Darr and Ms. Vales testified that appellant purposely fired at Mr. Darr. A neighbor observed appellant standing over Mr. Darr while another heard someone say "I got you, motherfucker." The evidence relied on the credibility of Mr. Darr and Ms. Vales apart from the substantial evidence of the neighbors and the physical location of Mr. Darr's wounds.
Accordingly, we find substantial evidence in the record as a whole, if believed, to support the finding of guilty, and no manifest miscarriage of justice.
Assignment of Error III is denied.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.
Hon. W. Scott Gwin, P.J. Hon. Sheila G. Farmer, J. Hon. John W. Wise, J. concur.
[1] Appellant is African-American.
[2] We note the second alternate juror was an African-American. Defense counsel did not request that the second alternate be used. T. at 168-170.
[3] We note that the trial court charged the jury on "accident." T. at 722.
[4] Ms. Vales was appellant's ex-girlfriend. T. at 175.